

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00749-CV

**IN THE INTEREST OF C.G.** and B.G., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-06759
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:       Sandee Bryan Marion, Justice

Sitting:          Karen Angelini, Justice
                  Sandee Bryan Marion, Justice
                  Patricia O. Alvarez, Justice

Delivered and Filed:  June 4, 2014

REVERSED AND RENDERED IN PART; AFFIRMED IN PART

This appeal arises from (1) an "Order Modifying Parent-Child Relationship" and (2) an "Order Holding [Loretta DiDonato] in Contempt and Granting Judgment for Child Support Arrearage and Attorney's Fees." We reverse the first order and render judgment denying the petition to modify the parent-child relationship. We affirm the second order.

### BACKGROUND

On December 13, 2011, Loretta DiDonato and Shaun Gifford entered into a settlement agreement in their divorce proceedings that imposed a geographic restriction on the children's residence requiring them to reside in Bexar County, Texas, or within 100 miles of Delaware County, New York. On December 18, 2011, Loretta moved with the children to Delaware County. On June 23, 2012, Loretta again moved with the children, this time to Philadelphia, Pennsylvania.

Loretta claims she used Google Maps to determine the distance between Delaware County and Philadelphia as ninety-six miles. At some point after Loretta's move to Philadelphia but before entry of the final divorce decree, Shaun filed a motion to change the geographic restriction to a seventy-five mile radius.

The parties' divorce decree was signed on June 27, 2012. Unfortunately, neither the clerk's record nor the reporter's record contains a copy of the 2011 agreement or the 2012 decree.[1] However, there is no dispute that the decree required the residence of the children to be in a geographical area defined as Bexar County, Texas, or a radius of seventy-five miles from the residence of the paternal grandparents or either of them in Delaware County, New York. The parties were prohibited from removing the children from this geographical area for the purpose of changing the children's residence until modified by further court order or by a written agreement of the parties. The decree also provided that, if Shaun resided more than 100 miles from the children, he had certain visitation rights.

Under the decree, Loretta and Shaun are joint managing conservators of their two children, with Loretta having the exclusive right to determine the children's residence "for school purposes only, but only so long as [Loretta] resides within the geographical area." Loretta had the right, subject to Shaun's agreement, to make decisions concerning the children's education. Both parties were enjoined from withdrawing the children from their present school absent written consent of both parties, or a court order. Any unilateral decision made by either party contrary to the terms of the decree would be null and void.

Five months after the decree was signed, Shaun filed a petition to modify the parent-child relationship in which Shaun asked to be appointed the joint managing conservator with the right

---

[1] The record contains only an unsigned proposed decree submitted as a trial exhibit.

to designate the primary residence of the children for school purposes. Shaun also asked for certain modifications to support. Finally, Shaun asked the court to declare null and void all unilateral decisions made by Loretta in regards to the children, such as the decision to reside with the children outside the seventy-five mile radius, the chosen educational institution in which the children are enrolled, and the extra-curricular activities in which the children are enrolled. Because the modification suit was filed within one year of the decree, Shaun attached a supporting affidavit.

Shaun also filed a petition for enforcement and order to appear, in which Shaun alleged several violations of the decree by Loretta. Shaun alleged Loretta removed the children from Bexar County and the seventy-five-mile radius of the paternal grandparents in Delaware County. He also alleged Loretta removed the children from their school in New York and enrolled them in school in Philadelphia without his consent or knowledge. Shaun also alleged Loretta violated the divorce decree in various other ways.

Following a two-day bench trial, the trial court granted Shaun's petition and modified the previous order (the decree) affecting the parent-child relationship and held Loretta in contempt. Loretta filed a request for findings of fact and conclusions of law, which the trial court did not enter. Loretta now appeals on four grounds, alleging the trial court erred (1) in failing to file findings of fact and conclusions of law; (2) by modifying the June 2012 child custody order; (3) when it assessed the amount of child support; and (4) when it held her in contempt.

## MODIFICATION OF CHILD CUSTODY ORDER

In the trial court's "Order Modifying Parent-Child Relationship," the court ordered that Shaun and Loretta remain joint managing conservators of the children, but modified the decree to give Shaun the exclusive rights to (1) designate the children's primary residence without regard to geographic location and (2) receive and give receipt for periodic payments for the children's support and to hold or disburse these funds for the children's benefit.

Loretta asserts the trial court erred in modifying the custody order for two reasons. First, she contends the trial court erred in finding Shaun's verified pleadings were sufficient to support a claim that the children's environment was harmful to their development. Second, she contends the evidence is insufficient to support a finding that the children's environment was harmful to their development.

## A.      Sufficiency of Shaun's Affidavit

When, as here, a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child "is filed not later than one year after the date of the rendition of the [divorce decree,] the person filing the suit shall execute and attach an affidavit as provided by Subsection (b)." TEX. FAM. CODE ANN. § 156.102(a) (West 2014). The affidavit must contain, along with supporting facts, an "allegation that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development[.]" *Id.* § 156.102(b)(1). "The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support [such] an allegation . . . are stated in the affidavit." *Id.* § 156.102(c). "If the court determines that the facts stated are adequate to support an allegation, the court shall set a time and place for the hearing." *Id.*

Here, Shaun's petition to modify alleged only that the circumstances of the children, a conservator, or other party affected by the order to be modified had materially and substantially changed since the date of the signing of the order to be modified. In his supporting affidavit, Shaun alleged that, based on Loretta's various acts and omissions,:

> [he] has been effectively excluded from active participation in the lives of the children and from access to and possession of them. [Loretta] has unduly influenced them and alienated them from me. She has failed to facilitate, encourage, nurture or support a relationship between the children and me but, instead, has done almost everything within her power to thwart and hinder my

personal relationship with the children. . . . [T]he children's present environment with [Loretta] may endanger their physical health or substantially impair their emotional development, especially if allowed to continue.

The affidavit contains no facts supporting how Loretta's acts or omissions endangered the children's physical health or substantially impaired their emotional development. Nevertheless, the trial court found that the material allegations in Shaun's petition were adequate. On appeal, Loretta contends the four corners of Shaun's affidavit precluded the trial court from proceeding to trial because there is no evidence in the record to substantiate the court's modification and the trial court did not enter findings of fact or conclusions of law.

To evaluate the sufficiency of a section 156.102(b) affidavit, a trial court must look at the sworn facts and determine whether, if true, they justify a hearing on the petition to modify. *In re A.L.W.*, 356 S.W.3d 564, 566 (Tex. App.—Texarkana 2011, no pet.); *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st. Dist.] 1997, pet. denied). If no affidavit is filed or if a filed affidavit is insufficient, section 156.102(c) requires a trial court to deny a motion to modify and refuse to schedule a hearing on its merits. *See* TEX. FAM. CODE § 156.102(c).

The entirety of Shaun's affidavit focuses on how Loretta's alleged acts or omissions affected him. Other than a single conclusory sentence, nothing in the affidavit speaks in terms of the children's physical or emotional well-being. Therefore, because the affidavit was not sufficient to justify a hearing under section 156.102, the trial court erred by not refusing to schedule a hearing. *See In re D.W.J.B.*, 362 S.W.3d 777, 781 (Tex. App.—Texarkana 2012, no pet.) (holding, "affidavit must contain sworn facts showing that the child is being harmed.");[2] *In re C.S.*, 264

---

[2] In *D.W.J.B.*, the court held that the portion of the grandmother's affidavit complaining of the father's criminal history and past car accidents did not support the idea that the child's present environment could endanger his physical health or significantly impair his emotional development. *Id.* at 781. The appellate court stated that the trial court was free to find that the grandmother's opinion that the father was an alcoholic, observations that the child became nervous when calling his father, statements that the child did not want to live with his father, and deep concerns for the child's "safety and welfare" in general and his medications, grades, and "anger issues" were insufficient to meet the burden required to disturb the court's recently-entered agreed order. *Id.*

S.W.3d 864, 874-75 (Tex. App.—Waco 2008, no pet.);[3] *Graves v. Graves*, 916 S.W.2d 65, 69 (Tex. App.—Houston [1st Dist.] 1996, no writ).[4]

However, even if the trial court erroneously conducts a hearing, any error is harmless if the testimony admitted during the hearing supports an allegation that the child's environment may significantly impair his or her physical health or emotional development. *Id.* at 567; *In re A.C.S.*, 157 S.W.3d 9, 18-19 (Tex. App.—Waco 2004, no pet.). Therefore, although Shaun's affidavit was insufficient, we next examine the record for evidence to support the allegation that the children's environment may significantly impair their physical health or emotional development.

## B.     Sufficiency of the Evidence

We review a trial court's decision to deny or grant a petition to modify a prior order of conservatorship under an abuse of discretion standard. *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.). When, as in this case, no findings of fact or conclusions of law are filed, we imply all necessary findings to support the trial court's judgment. *Holt Atherton*

---

[3] In *C.S.*, the court determined the following factual allegations in the father's supporting affidavit did not state "facts adequate to support an allegation" that "the child's present environment may . . . significantly impair the child's emotional development": (1) C.S. has at least twice called him by name and told him 'you are not my daddy' and that she is not supposed to call him her father; (2) C.S. has referred to her great-uncle as her 'daddy' and told [the father] that 'her 'daddy' was going to put [him] in jail'; (3) C.S. has told him that her last name is the same as appellees'; and (4) appellees 'follow behind my daughter and me, about five feet away, throughout the visitation at Chuckie–Cheese's. I cannot sufficiently bond with my daughter with the constant interference, such that the actions of [appellees] clearly are part of a pattern of parental alienation.'" *Id.* at 874-75.

[4] In *Graves*, the father's affidavit alleged the child's present environment may endanger her physical health or significantly impair her emotional development and alleged the following facts in support: (1) the mother allowed her boyfriend to move into her home prior to her move; (2) the mother's boyfriend denied the father access to the child; (3) the mother's boyfriend had threatened the father with bodily harm; and (4) "Since I have been unable to communicate with my child and do not know of her whereabouts, I am concerned that she may be in danger or could have possibly already incurred physical and/or emotional problems due to her current environment." *Id.* at 69. The court held "this affidavit is insufficient to satisfy the requirements of the Family Code because it does not allege any facts that show that the daughter's present environment may endanger her physical health or significantly impair her emotional development. The affidavit does not state whether the existence of the boyfriend detrimentally affects the child nor does it even assert that the separation from her father in any way endangers the child or damages her emotional development." *Id.*

*Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *In re B.N.B.*, 246 S.W.3d 403, 406 (Tex. App.—Dallas 2008, no pet.). If a reporter's record is included in the record on appeal, the implied findings may be challenged for legal and factual sufficiency. *Id.* Legal and factual insufficiency are not independent grounds for asserting error; they are merely relevant factors in assessing whether a trial court abused its discretion. *In re P.M.G.*, 405 S.W.3d at 410; *In re B.N.B.*, 246 S.W.3d at 405. A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle. *Id.* In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion. *In re P.M.G.*, 405 S.W.3d at 410. In a legal sufficiency review, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In a factual sufficiency review, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so outweighed by the contrary evidence as to render the verdict manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

On appeal, Loretta asserts that during the entirety of the two-day bench trial no evidence was presented by any witness with personal knowledge of the children's environment that the environment in which they lived might endanger their physical health or significantly impair their emotional development. We agree.

Shaun, a physician in the United States Air Force, testified first. Shaun said he is stationed out of San Antonio, but is currently living in Rochester, Minnesota, where he is undergoing a two-year fellowship in vascular surgery. At the time of trial, CG was nine years old, BG was seven years old, and both children were living with their mother in Philadelphia. Shaun described his

children as great, happy kids. He said CG has finished third grade and is an "excellent" student; and BG has "successfully" finished first grade. He said BG is very active and interested in any sport; while CG likes dolls, has been a cheerleader, and is in gymnastics.

Shaun testified that, after Loretta moved to Philadelphia, he did not receive weekly reports about the children, copies of their school records, or school progress reports. However, he admitted Loretta sent him photos of the children participating in extra-curricular activities and shared with him the children's successes in these activities. Shaun complained that although he was entitled to possession over the 2012 Thanksgiving holiday, Loretta did not send the children to him in Minnesota. However, Shaun's parents were able to see the children in New York over the 2012 Thanksgiving to early December break, although he was unable to travel to New York to see them. Also, regarding this holiday, Shaun said Loretta violated the injunction against discussing matters with the children when she discussed with CG the children going to Minnesota for the 2012 Thanksgiving holiday. According to Shaun, Loretta told him that CG wanted to have the whole family together and wanted her father to travel to New York for that purpose.

Shaun next complained Loretta refused to deliver the children to him on the first, third, and fifth weekends of each month beginning the fifth weekend of August 2012 through the third weekend of November 2012. For example, he stated Loretta refused to deliver the children any earlier than 11:00 p.m. on December 28, 2012, because she refused to leave her job early and refused to have anyone else deliver the children. Shaun admitted that after the Christmas 2012 school break, Loretta sent him more updates about the children, although he said some of the information was inaccurate. He testified Loretta did not tell him BG was having difficulties at school. Shaun explained that when BG was about eighteen months old, he had apneic seizures that caused him to stop breathing. BG had surgery when he was about two years old that solved the condition and he had been medication-free. However, after Loretta moved to Philadelphia,

BG's teacher became concerned about BG's ability to concentrate. Just before Spring Break of 2013, Loretta told Shaun that BG was having "night terrors." Because of BG's history with seizures BG underwent a neurological evaluation at the Children's Hospital in Philadelphia, which showed "abnormal spiking" for which BG was placed on medication. Shaun complained that Loretta had proposed that instead of sending the children to him for the 2013 Spring Break, BG should undergo the evaluation in Philadelphia over the break so he would not miss any school. Shaun said he objected; therefore, the testing was done before Spring Break and the children were sent to him as planned. He was not aware of whether BG went to a follow-up medical appointment scheduled for February 2013.

Shaun said he was "not always" able to talk to the children on a nightly basis, and his phone messages were not "always returned." He said Loretta would occasionally tell him the children could not speak to him because "[i]t was too close to their bedtime or they were already in bed or they were outside playing." He said Loretta would "sometimes use these calls to the children as an excuse to have the children deliver a message to" him, but he did not elaborate. He said telephone conversations with the children were monitored because the calls were on a speaker phone and he could hear the children talking to Loretta when they should have been talking to him.

According to Shaun, the distance from Delaware County, New York, to Loretta's residence in Philadelphia is 171 miles, and the distance between his parents' residence and Loretta's residence is 228 miles.

He said one day CG told him she "was being bad" and Loretta's current husband "grabbed her and picked her up and threw her on the bed and scared her a bit." He said CG appeared "concerned that telling [him] would get her in trouble." He said CG was a "very truthful" child, but when he mentioned the incident to Loretta, Loretta assured him the incident never happened.

He admitted that when the children were younger, he and Loretta spanked them. He said he no longer spanks the children, but CG has complained to him that BG gets spanked "when he's bad."

At the end of his testimony, Shaun said he wanted the court to modify the domicile restriction and allow the children to primarily reside with him, with Loretta having standard long-distance visitation rights. He said he is currently the senior fellow, and his work week is Monday through Friday, approximately fifty to sixty hours per week. One of those days he is on backup call, and one weekend out of six he is on call. When the children visit him, he has a nanny who is doing well with the children; but, if he is awarded custody, he would need to hire a different nanny to help during the school year because the current nanny is only part-time and a student herself. He has investigated one school near him that the children could attend. Shaun said he has been dating a woman for about one year who has a three-year-old son and they reside with him. He said his townhouse has two bedrooms and a loft he converted into a bedroom. CG stays in the loft that does not have closed doors, but instead, has dividers placed to quarter her off. BG and his girlfriend's son stay in the second bedroom.

Shaun testified that the "extreme difficulties" he has had communicating with his children has made it more difficult to interact with them; and he cannot have a good conversation with them about their day with the constant distractions and difficulty accessing them. He admitted he has not enrolled in a website offered by the children's current school that would allow him access to the school's calendar.

Next, Loretta testified. She is thirty-three years old, has a heart monitor, and quit smoking about four months before the trial. She said she has known her current husband, John, for many years but only as friends; John helped her move from San Antonio to New York in 2011; and they married on July 19, 2012. She said John works in Philadelphia and occasionally in New Jersey. When she began her relationship with John she understood she had to live within a 100-mile radius

of Delaware County, and she used Google Maps to calculate that Philadelphia was ninety-six miles from Delaware County. Loretta was asked about several weekends in which she asked her mother-in-law to keep the children so that she could go to Philadelphia. Loretta said these visits to Philadelphia were for purposes other than seeing John, but she did see him while she was in the city.

Loretta claimed she spoke to Shaun about once a week to tell him what was happening with the children. Loretta admitted the children's grandparents took the children to March 2012 Little League tryouts because she was in Philadelphia, but she could not remember missing a school celebration in late March 2012. She also thought she missed a school open house and the first Little League game because the children had their usual visitations with their grandparents and she was in Philadelphia. She agreed that since she moved to Philadelphia, Shaun's parents have not had possession on Thursdays, and did not have weekend possession until December 7, 2012. But, she said there were "make up weekends in between," and when the children could not go to their grandparents it was because they had sports or cheerleading.

As for the Thanksgiving 2012 weekend, Loretta said CG came to her upset, and she [Loretta] did not know what to do. She admitted not sending the children to Shaun was "bad judgment." Regarding the incident when CG alleged John picked her up and threw her on the bed, Loretta said she was present and she believed CG was "not lying to her dad, but maybe blowing it out of proportion a little bit because she was upset that she got in trouble." Loretta believed CG probably was scared because CG is sensitive and gets scared if anyone yells at her. She denied telling her children that Shaun would rather go on vacation than come see them, although she admitted saying something to Shaun. She said she realized, in April 2013, the children needed to spend more time with Shaun. She also said she was "accountable for not taking [the children to their grandparents] every other single week that they were supposed to [go]." She acknowledged

the decree allowed Shaun to call every night between 5:00 p.m. and 8:00 p.m., but she said that sometimes the children were in bed early and she would not let Shaun speak to them. However, she said the children would call the next morning and speak to him.

Loretta said Shaun agreed to the children's enrollment in school in Philadelphia. She said she told Shaun in March 2012 that she and the children were moving to Philadelphia because she was going by what she thought the agreement allowed (the 100-mile radius); she was moving for school purposes because she thought the children would have a better opportunity to engage in sports; and she would have a better opportunity to find a job. She said she informed Shaun when she signed her lease in Philadelphia, when she removed the children from school in New York, and about their school in Philadelphia. She admitted she did not list Shaun as an emergency contact at the school, because he lived in Minnesota. She said she had enrolled the children in extra-curricular activities, and these activities interfered with five periods of possession. She said the geographical restriction was changed from 100 miles to seventy-five miles after she signed her new lease and after she spoke to Shaun.

Loretta said there is nothing in the children's current environment that significantly impairs their emotional development, or would cause them potential physical or emotional harm. She denied trying to alienate the children from their father or making disparaging remarks about him.

The next witness was Shaun's mother, Beverly Gifford. Beverly testified about missed possession weekends with the children. She said her son could provide a more stable environment for the children, but she did not explain her reasons. Next, Maria Gummerson testified that she and her husband know both Shaun and Loretta. Maria believes Shaun "is a better parent at parenting the two children." She said when the children acted out, the children were "more responsive" to Shaun; Loretta "would go to the brink of anger much faster than Shaun"; and Loretta would have a "verbal outlash" whereas Shaun would try to stay composed and have a conversation

with the children. In social settings, she said Loretta became inebriated more often than Shaun. She thought Loretta was not happy with her situation or with the kids, whereas Shaun "has a lot on his plate between family and job." As for her observations of the children with Shaun, Maria said he was very good with them, very attentive, ensured they had their meals, and followed the rules of not running and screaming. Maria admitted she has never met John, has never been to Loretta's current home, and has no knowledge of the children's current environment.

While the record indicates a poor relationship between Shaun and Loretta, and even assuming Loretta violated the terms of the divorce decree, we believe the evidence is legally insufficient to support an implied finding that the children's present environment may endanger their physical health or significantly impair their emotional development. *See In re C.S.*, 264 S.W.3d at 874 (concluding that although allegations indicated pattern of parental alienation, allegations did not support finding that the children's present environment may endanger their physical health or significantly impair their emotional development); *In re Aguirre*, No. 03-06-00403-CV, 2006 WL 2819069, at *2 (Tex. App.—Austin Aug. 25, 2006, no pet.) (mem. op.) ("Although the affidavit reflects Olivarez's disagreement with Aguirre's decision to move the children to North Dakota and his concern that it could affect both his relationship with them and their emotional development, the affidavit does not contain any information or supporting facts that satisfy the requirements of section 156.102."); *Burkhart*, 960 S.W.2d at 324 (bare allegation that respondent was "in essence denying [petitioner's] rightful visitation" did not suffice to show substantial impairment); *compare with In re A.C.S.*, 157 S.W.3d at 18 ("Scott testified in some detail that Andrea was limiting his access to the children. He described a particular visit in South Carolina during which one of his daughters cried because she was not going to be able to see her paternal grandmother and cousins. Thus, he presented evidence which would support an allegation that the children's environment may 'significantly impair [their] emotional development.'").

We note that Shaun's petition sought to modify access and possession of the children, and child support to require Loretta to pay support to Shaun. Therefore, he had the burden to establish that the modification would be in the children's best interest and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the time of the rendition of the divorce decree. TEX. FAM. CODE § 156.101(a)(1)(A); *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, no pet.) (party seeking modification has burden to establish these elements by a preponderance of the evidence). However, because Shaun sought to modify the right to determine the children's primary residence within one year of the decree, he also had the burden to satisfy the requirements of section 156.102. At trial and on appeal, Shaun did not argue how "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since the time of the rendition of the divorce decree. To the extent Shaun would argue that Loretta's move to Philadelphia was the material and substantial change, we again note that this move occurred *before* rendition of the divorce decree.[5]

On this record, we conclude the trial court did not have sufficient evidence upon which to exercise its discretion to modify the parent-child relationship within one year of the divorce decree. With no evidence to support findings that the children's present environment may endanger their physical health or significantly impair their emotional development, coupled with Shaun's own admission that his children are happy and are doing well in school and extra-curricular activities, we conclude the trial court erred in modifying the order regarding the parent-child relationship.[6]

---

[5] We also note that Maria's testimony relates to a period of time that pre-dates the divorce decree.

[6] In a separate issue on appeal, Loretta complains of the trial court's failure to issue findings of fact and conclusions of law despite her timely request. Findings of fact and conclusions of law are required upon request in any case tried in the district or county court without a jury. *Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 138 S.W.3d 907, 908 (Tex. 2004) (per curiam); *see also* TEX. R. CIV. P. 296, 297. A trial court's failure to make findings is not harmful error if the record before the appellate court affirmatively shows the complaining party suffered no injury. *Tenery v.*

## CONTEMPT

Loretta next challenges the "Order Holding [her] in Contempt and Granting Judgment for Child Support Arrearage and Attorney's Fees." The court awarded Shaun $715.80, plus interest, based on Loretta's failure to pay transportation costs; and $4,575.43 in attorney's fees and court costs. On appeal, Loretta does not challenge the amount of the sanction, she only argues she should not have been held in contempt. Contempt is a broad and inherent power of a court, but, should be exercised with caution. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). We review a trial court's decision to hold a party in contempt for an abuse of discretion. *See id.* at 369.

Loretta first asserts the trial court failed to issue findings of fact and conclusions of law that would allow this court "to determine where in [the] 159 pages of testimony, and 40 exhibits, the facts to support the judgment can be found." We disagree. Although the trial court failed to enter separate findings and conclusions, the contempt order sets forth "contempt findings" as to each of the seven individual counts of alleged contempt.

Loretta next asserts the evidence is insufficient to support the court's findings. Under Count One, the trial court found Loretta violated the divorce decree by (1) removing the children from the divorce decree's seventy-five-mile-radius without first obtaining written agreement from Shaun or a court order, and (2) changing the children's residence to Philadelphia without a written

---

*Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam). Harm to the complaining party is presumed unless the contrary appears on the face of the record when the party makes a proper and timely request for findings and the trial court fails to comply. *Id.* Error is harmful if it prevents an appellant from properly presenting a case on appeal. *Id.* The test is whether the circumstances of the case would require the party to guess the reason or reasons for the trial court's ruling. *Burnet Cent. Appraisal Dist. v. Millmeyer*, 287 S.W.3d 753, 756 (Tex. App.—Austin 2009, no pet.). The purpose of a request under the rules is to "narrow the bases of the judgment to only a portion of [the multiple] claims and defenses, thereby reducing the number of contentions that the appellant must raise on appeal." *Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied). In light of our conclusion regarding the trial court's error in modifying the order affecting the parent-child relationship, we do not believe Loretta was harmed as a result of the trial court's failure to enter findings and conclusions.

agreement of the parties or a court order. There is no dispute that the parties agreed, in 2011, to a 100-mile geographical restriction and that Loretta moved to Philadelphia before the seventy-five-mile restriction was imposed by the June 27, 2012 decree. Therefore, at the time she moved, the divorce decree had not been entered. Because the trial court's contempt findings were based on violations of the decree, and not the 2011 agreement, we must conclude the trial court erred in holding Loretta in contempt under Count One because Loretta cannot be held in contempt for failing to comply with a decree that did not exist at the time of her move.

Under Contempt Counts Two through Seven, the trial court found Loretta violated the decree by (1) removing the children from their New York school without Shaun's written agreement and enrolling them in their Philadelphia school without Shaun's agreement; (2) failing to deliver the children to Shaun's parents on seven specific dates; (3) failing to provide possession to Shaun and pay for travel expenses associated with the Summer of 2012 and Thanksgiving 2012; (4) failing to allow Shaun daily telephone/electronic/Skype access on four specific dates; (5) failing to provide Shaun with a weekly email exchange of information regarding the children and failing to scan and email to Shaun school notices and other school information sent home with the children; and (6) failing to provide Shaun with notification of health care appointments for the children and failing to obtain health care available for the children as dependents of a United States Armed Forces member on seven specific dates.

While the evidence in support of Counts Two through Seven was disputed, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Ramos v. Ramos*, 683 S.W.2d 84, 87 (Tex. App.—San Antonio 1984, no writ) (holding evidence sufficient to support contempt finding even though evidence was conflicting as to whether mother denied father visitation rights, because judge, as trier of fact, had opportunity to

observe the witnesses and to determine their credibility). Based on our review of the record, we conclude the court did not abuse its discretion on Counts Two through Seven.

## CONCLUSION

We reverse the trial court's "Order Modifying Parent-Child Relationship" and render judgment that Shaun's "Petition to Modify Parent-Child Relationship" is denied.[7] As to the trial court's "Order Holding [Loretta DiDonato] in Contempt and Granting Judgment for Child Support Arrearage and Attorney's Fees," the court's "support arrearage" award of $715.80, plus interest, was based on Loretta's failure to pay transportation costs. Therefore, although the trial court erred in holding Loretta in contempt under Count One, because the trial court did not assess any monetary sanction under Count One, we affirm the award of $715.80, plus interest. On appeal, Loretta does not raise any alternative argument that the award of $4,575.43 in attorney's fees and court costs should be set aside. Therefore, we likewise affirm that award.

Sandee Bryan Marion, Justice

---

[7] Because we reverse the modification order, we do not address Loretta's second issue, which challenges the court's order that she pay Shaun monthly child support. *See* TEX. R. APP. P. 47.1.