

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00093-CV

_____

IN THE INTEREST OF D. W. J. B., A CHILD

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 80666

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

The maternal grandmother of D. W. J. B., the child the subject of the controversy in this suit, appeals the trial court's dismissal of her suit affecting parent-child relationship. The grandmother argues that the trial court erred in failing to allow her to present evidence prior to dismissal of her suit. Because the trial court had recently entered an order modifying the parent-child relationship pursuant to an agreement entered by the child's parents in a separate cause, the trial court determined the grandmother had not met her burden under Section 156.102 of the Texas Family Code to support her contentions by affidavit that the child's present environment could endanger his physical health or significantly impair his emotional development. We affirm.

On June 20, 2011, the child's parents, Brandie and Spencer, entered into an "agreed parenting plan" to raise and support the child. The grandmother was present at the hearing during which the agreement was reached. On July 30, 2011, the trial court entered an order modifying Brandie's and Spencer's parental relationship with D. W. J. B., this containing a standard possession order in accord with the agreement. The order named the parents joint managing conservators of the child, with Spencer being the conservator having the exclusive right to designate the primary residence of the child, ordering Brandie to pay child support, but adjusting that to compensate for unpaid installments of child support due to Brandie from Spencer. Although the grandmother was present at the hearing which resulted in the agreement and the subsequent order, she apparently did not concur with the outcome.

2

Between the date of the hearing but before the entry of the order which incorporated the agreement, the grandmother filed an original petition in suit affecting the parent-child relationship of the child in a separate cause number on July 8, 2011. She asked the court to order Spencer to fulfill his child support obligations and requested entry of a temporary restraining order preventing Spencer from: "[d]isturbing the peace of the child or of another party"; "[m]aking disparaging remarks regarding Petitioner in the presence or within the hearing range of the child"; or "[c]onsuming alcohol within the 12 hours before or during the period of possession of or access to the child." Even though the order (in accord with the parties' agreement) required Spencer to continue medical insurance coverage under a governmental medical assistance program or health plan for the child, the grandmother asked for an order that Spencer be prevented from "[c]anceling[,] altering, failing to pay premiums, or in any manner affecting the present level of coverage of any health insurance policy insuring the child." Finally, the grandmother asked the court to enter an order "excluding Respondent from possession of or access to the child."

> (a)     The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
> (1)     the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
> (A)     the date of the rendition of the order; or
> (B)     the date of the signing of a mediated or collaborative law settlement agreement on which the order is based . . . .

TEX. FAM. CODE ANN. § 156.101 (West Supp. 2011).

Section 156.102 of the Texas Family Code states:

> (a)     If a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after the earlier of the date of the rendition of the order or the date of the signing of a mediated or collaborative law settlement agreement on which the order is based, the person filing the suit shall execute and attach an affidavit as provided by Subsection (b).
>
> (b)     The affidavit must contain, along with supporting facts, at least one of the following allegations:
>
>> (1)     that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;
>>
>> (2)     that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting to the modification and the modification is in the best interest of the child; or
>>
>> (3)     that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child for at least six months and the modification is in the best interest of the child.
>
> (c)     The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit.   If the court determines that the facts stated are adequate to support an allegation, the court shall set a time and place for the hearing.

TEX. FAM. CODE ANN. § 156.102 (West Supp. 2011).

To support her request for relief, the grandmother filed an affidavit claiming that she was "deeply concerned for the safety and welfare" of the child, complaining of Spencer's "lengthy criminal history" (which she said included charges of attempted sexual assault of a child, failure to

register as a sex offender, burglary of a building, criminal trespass, driving while intoxicated, and possession of a prohibited weapon). The grandmother went on to say that she believed Spencer to be an alcoholic, noting that the court recently ordered him not to drink in the child's presence, and stated that the child "has since told me that his father has tried to trick him by drinking his beer out of a cup until he gets drunk and forgets—then he drinks it out of the can in front of him." The grandmother continued by reciting that Spencer had been involved in three automobile accidents, the most recent one being "when he ran into a lone tree in the middle of a pasture." She stated, "Whenever [the child] talks to his father on the phone, his eyes start twitching and he becomes very nervous. [The child] has repeatedly told me that he doesn't wish to live at his father's residence."

Going further, the grandmother's affidavit also recited that she had heard from the child that Spencer (1) "whips with a paddle on his seat," (2) threatened the child with depriving him from seeing his mother until he came "home from school with a gold star," and (3) took him to the River Bar in Oklahoma (adding that "[f]rom what [she] heard of the River Bar, it is not a place for children"). She said that the child had told her that Spencer's girlfriend was mean and called him "retarded," and "down's syndrome child" and that while the child "mimicked rolling a cigarette," he had related to her that his father had taken him with him to get "weed." She passed along the information that the child's "great grandmother told me that last night, [the child] told her that 'Jesus was on his side—that he prayed in church that when they whipped with the paddle, it

5

wouldn't hurt.'" Finally, the grandmother expressed that she was concerned about the medications being administered to the child, his grades, and his "anger issues."

Spencer filed his response, along with a motion to dismiss. The motion argued that this same action was pending in a separate cause and that a final order in that case was entered on July 30, 2011. The two cases were consolidated pursuant to the grandmother's motion, and a hearing was set on Spencer's motion to dismiss.

At the hearing, counsel argued (and the trial court remembered) that the grandmother had been present at both hearings held prior to entry of the agreed order, pointing out that although there had been ample opportunity to intervene in the existing lawsuit, she apparently did not choose to do so. Counsel argued that "[w]hile the order wasn't entered until July 20th, whatever date that was, the actual agreement was reached in court at least a month before that. So there are some issues and some things that the Court has not heard and [the grandmother] has not had an opportunity to testify and tell her story." The grandmother testified what while she was aware of the suit and was in the courtroom on those previous occasions, she "had no idea that she would -- that there was any chance that [her daughter] would lose [the child]." The trial court granted the motion to dismiss.

On appeal, the grandmother complains that the trial court erred in failing to allow presentation of evidence prior to dismissal of her suit. We review a trial court's decision regarding custody, control, and possession matters involving a child under an abuse of discretion

6

standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Voros v. Turnage*, 856 S.W.2d 759, 760–61 (Tex. App.—Houston [1st Dist.] 1993, writ denied). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied).

"To determine whether the affidavit was sufficient, the trial court had to look at the facts sworn therein and make an initial determination whether, if true, these facts justified a hearing on the motion to modify." *Graves v. Graves*, 916 S.W.2d 65, 69 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). "The philosophical underpinning of section 156.102 is clear: the Legislature intended to promote stability in the conservatorship of children." *Burkhart*, 960 S.W.2d at 323. "To that end, relitigation of custodial issues within a short period of time after the custody order is discouraged through the imposition of a heightened standard of verified pleading." *Id.*

An affidavit not explicitly based on personal knowledge is legally insufficient. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010); *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). Conclusions in the affidavits based upon the statements from others[1] demonstrate the grandmother's lack of personal knowledge. Because the portion of the affidavit regarding Spencer's girlfriend, the child's discipline, his prayers, the trip to the bar, and to

---

[1] Statements, for example, that "[f]rom what [she] heard of the River Bar, it is not a place for children," and recitations of statements allegedly made by the child to his paternal grandmother and to great-grandmother.

7

get "weed" were not within the grandmother's personal knowledge, these statements were not required consideration by the trial court during the initial examination of whether the affidavit was sufficient to merit a hearing under Section 156.102 of the Texas Family Code.

Next, the affidavit must contain sworn facts showing that the child is being harmed. *See Burkhart*, 960 S.W.2d at 324.[2] The portion of the grandmother's affidavit complaining of Spencer's criminal history and past car accidents did not support the idea that the child's present environment could endanger his physical health or significantly impair his emotional development. Rather, these facts pertained to Spencer's character and specific instances of conduct, which could have occurred prior to entry of the agreed order. The grandmother's statement suggesting that Spencer was violating a court order by allegedly drinking in front of the child could have been discounted by the court because the agreed order did not prevent Spencer from drinking in front of the child, the grandmother had not observed Spencer drinking in front of the child, and (even if personally observed) the act of drinking in front of the child did not necessarily demonstrate that the child's physical health or emotional development was adversely affected. The trial court was also free to find that the grandmother's opinion that Spencer was an alcoholic, observations that the child became nervous when calling his father, statements that the

---

[2] "The unadorned statement that adults smoke in the house is too nebulous to justify a modification hearing. The father would have had to swear to facts that specifically pointed to endangerment of the child's health, such as frequent smoking in the presence of the child which aggravated a heightened sensitivity to respiratory distress. Insufficient, too, is the reference to the mother's lack of employment, her receipt of welfare payments, and the offset of a portion of the child support payments. The father does not state that the child is hungry, unclothed, or otherwise harmed as a result." *Burkhart*, 960 S.W.2d at 324.

child did not want to live with his father, and deep concerns for the child's "safety and welfare" in general and his medications, grades, and "anger issues" were insufficient to meet the burden required to disturb the court's recently-entered agreed order.

We conclude that the trial court did not abuse its discretion in finding that the grandmother's affidavit failed to allege personally known facts demonstrating that the child's present environment could endanger his physical health or significantly impair his emotional development.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

CONCURRING OPINION

The trial court shall refuse to schedule a hearing for modification of an action filed within one year of the prior order unless it determines, on the basis of an affidavit, that specific facts required by the statute exist. TEX. FAM. CODE ANN. § 156.102(c) (West Supp. 2011). Scheduling such a hearing is an implicit finding by the trial court that adequate facts are shown which make the hearing necessary even though it is within one year from the previous order. *In re*

*A.L.W.*, No. 06-11-00060-CV, 2011 Tex. App. LEXIS 2926 (Tex. App.—Texarkana Dec. 9, 2011, no pet. h.).   A different set of rules apply to hearings on original proceedings; ex parte temporary orders to exclude a parent from possession or access to the child may only be granted when it clearly appears from specific facts shown in the affidavit or sworn pleading that immediate and irreparable injury, loss, or damage will result before notice can be served.   TEX. FAM. CODE ANN. § 105.001(b), (c)(3) (West 2008); TEX. R. CIV. P. 680.

Here, the grandmother filed another suit affecting the parent-child relationship after the conservatorship had very recently been agreed upon by the child's parents and approved by the trial court.   In filing this new suit and seeking a temporary order, the grandmother alleged, inaccurately, that no conservatorship order controlled.   From reading the grandmother's petition, it appeared that this was a new action having no relationship to the previous conservatorship proceeding.   The trial court set a hearing on the grandmother's original petition without reference to the previous conservatorship order.   So in this instance, even though the trial court scheduled a temporary hearing, it cannot be said that by doing so, it implicitly found the facts were sufficient to allow an attack, within one year, of the previous conservatorship order.

I concur in the judgment.


Jack Carter
Justice


10

Date Submitted:    February 9, 2012
Date Decided:      February 10, 2012