

# NUMBER 13-13-00162-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ADRIAN GAITAN,                                                              Appellant,

## v.

ERICA THUMANN,                                                              Appellee.

### On appeal from the 25th District Court
### of Lavaca County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Adrian Gaitan appeals a child custody order rendered in favor of appellee Erica Thumann. By one issue, Gaitan argues the trial court abused its discretion in granting Thumann the exclusive right to determine the residence of the parties' minor child. We affirm.

## I.   BACKGROUND

Gaitan and Thumann are the biological parents of O.G., a minor child born in 2008. Prior to their break-up, the couple lived together with O.G. for approximately three years, but never married.   During their relationship, Gaitan worked in the offshore oil production industry, but by the time of trial, he was employed full time with a shore based oilfield service company.   Thumann worked part-time as a bookkeeper and payroll processor. Thumann testified she used drugs during her relationship with Gaitan and that she was investigated by the Texas Department of Family and Protective Services (CPS) on three separate occasions.   One of the investigations occurred when both parents were still living together.   At that time, Thumann failed a drug test, and CPS removed O.G. from the home.   O.G. thereafter lived with a relative for approximately one month, but was returned to Gaitan and Thumann's home pursuant to a CPS safety plan.

After the parties separated, Gaitan filed an original suit affecting the parent-child relationship, requesting temporary conservatorship of O.G. and for Thumann to have supervised access. Approximately one month later, the parties entered a Rule 11 agreement, approved by the court, giving Thumann the right to designate O.G.'s residence.[1]   During the pendency of the case, the parties subsequently agreed to the preparation of a home study.   The home study concluded that Gaitan should be given the right to designate O.G.'s residence.

---

[1] *See* TEX. R. CIV. P. 11.   The Rule 11 agreement further stipulated the rights of the parents and the amount of child support that Gaitan must pay.

Following a bench trial, the trial court held that the parties would remain joint managing conservators, sharing equal rights and duties pertaining to the health and education of the child, but that Thumann would have the exclusive right to establish O.G.'s residence.

## II. DETERMINATION OF CHILD'S PRIMARY RESIDENCE

Gaitan contends that the trial court improperly relied on the following criteria to support its holding granting Thumann the exclusive right to determine the child's primary residence: (1) that Thumann took a parenting class and Gaitan did not; (2) that Gaitan did not list Thumann's name as an emergency contact at the child's school; (3) the conduct of Gaitan's parents; and (4) the conduct of Thumann after entry of the temporary orders. Gaitan argues that the above factors are not part of the best-interest standard and may not be relied on by the trial court. We disagree.

### A. Standard of Review

In determining which joint managing conservator will have the exclusive right to establish the primary residence of the children, the trial court is vested with broad discretion. *See In re K.L.W.*, 301 S.W.3d 423, 428 (Tex. App.—Dallas 2009, no pet.); *see also In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) ("We review a trial court's decision regarding custody, control, and possession matters involving a child under an abuse of discretion standard."). The trial court's judgment will be disturbed only where the record as a whole shows that the trial court abused its discretion.[2] *Strong v. Strong*, 350 S.W.3d 759, 765 (Tex. App.—Dallas 2011, pet.

---

[2] In his brief, Gaitan urges us to review this case based on the factual sufficiency. In family law cases, evidentiary sufficiency is not an independent ground of error but instead is a factor relevant to our

denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)); *see Pena v. Pena*, 8 S.W.3d 639, 639 (Tex. 1999) (per curiam) ("[T]he trial court is vested with wide discretion in determining custody issues."). We accord the trial court great latitude in judging credibility and concern for the child's best interest. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005); *In re B.L.D.,* 113 S.W.3d 340, 348 (Tex. 2003).

A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000); *In re T.D.C.,* 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). A trial court does not abuse its discretion when it makes a decision on conflicting evidence. *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex. App.—Dallas 2003, no pet.). If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.); *see In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The evidence need not be compelling or conclusive to support the trial court's exercise of discretion. *See Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.

---

assessment of whether the trial court abused its discretion. *See In re A.B.P.,* 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.).

App.—Houston [1st Dist.] 1993, writ denied) (holding there is no abuse of discretion if some evidence of a substantive and probative character supports the decision).

When the trial court does not file findings of fact and conclusions of law, it is implied that the trial court made all the necessary findings to support its final order. *See Burns*, 116 S.W.3d at 920. The judgment will be upheld on any legal theory that finds support in the evidence. *Strong*, 350 S.W.3d at 765; *see In re A.N.O.*, 332 S.W.3d 673, 676 (Tex. App.—Eastland 2010, no pet.); *see also In re C.B.*, No. 13-11-00472-CV, 2012 WL 3139866, at *1–2 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op.).

## B.   Applicable Law

The Texas Family Code establishes the best interest of the child as the primary consideration when courts determine conservatorship of a child. TEX. FAM. CODE ANN. § 153.002 (West, Westlaw through 2013 3d C.S.). Section 153.134 lists six specific factors in determining best interest.[3] *Id.* § 153.134(a) (West, Westlaw through 2013 3d C.S.). Several, but not all, of the listed factors correspond with those set out by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors are:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

---

[3] The statutory factors are: (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators; (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest; (3) whether each parent can encourage and accept a positive relationship between the child and the other parent; (4) whether both parents participated in child rearing before the filing of the suit; (5) the geographical proximity of the parents' residences; (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and (7) any other relevant factor. *See* TEX. FAM. CODE ANN. § 153.134 (West, Westlaw through 2013 3d C.S).

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Id.* at 372. This list is by no means exhaustive. *Id.* Although *Holley* involved the termination of parental rights, appellate courts look to the factors listed there in determining the issue of best interest in other suits affecting the parent-child relationship. *See, e.g., In re C.R.O.*, 96 S.W.3d 442, 451 (Tex. App.—Amarillo 2002, pet. denied); *see also Shoemake v. Shoemake*, No. 13-05-00421-CV, 2007 WL 1288815, at *4 (Tex. App.—Corpus Christi May 3, 2007, no pet.) (mem. op.).

**C. Analysis**

**1. The child's emotional and physical needs now and in the future**

George Matthews conducted the home study on Thumann and Gaitan. Matthews did not identify any deficiency regarding Thumann's ability to meet O.G.'s emotional and physical needs, but concluded that Gaitan should be the parent with the right to designate the child's primary residence. In reaching this conclusion, Matthews believed that Gaitan demonstrated a great deal of stability and would be better able to meet the needs of the child on a more long-term basis. Matthews testified that the home study was conducted

6

approximately eleven months before trial. The trial court, however, also heard the following testimony regarding Thumann obtaining a job and a home and the potential effect of Thumann's change of circumstances:

| [THUMANN COUNSEL]: | So do you consider providing for the child having a job, as that — |
| --- | --- |
| [MATTHEWS]: | Yes. |
| [THUMANN COUNSEL]: | — a good thing? |
| [MATTHEWS]: | That's usually — yes. |
| [THUMANN COUNSEL]: | Having a home of your own? |
| [MATTHEWS]: | Not necessarily a home of their own, but certainly adequate space in the home for the number of people that are going to be living in the home. |
| [THUMANN COUNSEL]: | So theoretically, at this point, if you were to find out Ms. Thumann has held a job steadily since May, albeit, part time – |
| [MATTHEWS]: | Uh-huh. |
| [THUMANN COUNSEL]: | — and found a home of her own for her and her son, would that be a positive thing? |
| [MATTHEWS]: | That would be a positive thing. |
| [THUMANN COUNSEL]: | And at the time when this was conducted, could that have had a bearing? |
| [MATTHEWS]: | Yes. |

We believe that the trial court was presented with a different set of facts at the time of trial than what Matthews faced at the time of the home study. Therefore, it was

7

reasonable for the court to reach a different conclusion than Matthews regarding which parent should have the right to designate the child's residence.

Additionally, the trial court heard testimony regarding drug use. Although Thumann acknowledged her past drug use, she testified that her most recent drug use occurred in the fall of 2010, when she was still in a relationship with Gaitan. She further stated that Gaitan provided her with the drugs and used drugs with her on previous occasions. According to Thumann, the child was not present when she used drugs. Thumann introduced a negative hair follicle drug test collected in October 2012. She further testified that she has been O.G.'s primary caretaker throughout his life and that O.G. has continued to live with her since her separation from Gaitan.

Gaitan testified that O.G. is healthy, well dressed, and properly groomed. He also stated that during the relationship, Thumann would take O.G. to the doctor regularly, and that she was the sole caretaker for O.G. when Gaitan worked offshore. From this testimony, the trial court could have reasonably concluded that Thumann is able to safely care for O.G. and that while she may have used drugs in the past, she was not currently using drugs and did not pose a risk to O.G.'s safety.

### 2. The emotional and physical danger now and in the future

Gaitan testified that he does not consider Thumann to be a danger to O.G. As we previously noted, the court heard testimony pertaining to Thumann's previous drug use and her housing and employment stability. When considering the evidence, the trial court could have reasonably formed the belief that Thumann did not present a danger to the child's emotional and physical well-being.

8

### 3. The parental abilities of the individuals seeking custody

During the pendency of the suit, Thumann took a parenting class and Gaitan did not. Although Gaitan argues that such a consideration is improper, whether or not the parties take a parenting class is a relevant factor since a parenting class will arguably have an impact on a party's parenting ability. *See Holley*, 544 S.W.2d at 372. Similarly, Gaitan's failure to list Thumann as an emergency contact on O.G.'s school records, although dismissed by Gaitan, is relevant because it casts doubt on whether Gaitan could encourage and accept a positive relationship between the child and Thumann. *See* TEX. FAM. CODE Ann. § 153.134(a)(3).

Gaitan also challenges the trial court's consideration of several letters written by Gaitan's family to the home study preparer. The letters contained negative comments directed at Thumann, which the trial court may have viewed unfavorably. Coupled with Thumann's testimony, the letters provide evidence regarding the co-parenting abilities of Thumann and Gaitan. Such evidence is relevant since the trial court is permitted to consider co-parenting abilities in assigning rights and duties to each parent. *See In re M.A.M.*, 346 S.W.3d 10, 18 (Tex. App.—Dallas 2011, no pet.). It was not improper for the trial court to consider the letters in determining the best interest of the child.

### 4. The stability of the home or proposed placement

Gaitan argues that Thumann's frequent moves indicate a lack of stability. Thumann testified that she had moved four times in the year and a half since her separation from Gaitan and that at the time of trial she had been living at her current address for a period of two months. At the time the Rule 11 agreement was entered,

9

Thumann was living in San Antonio, and Gaitan was living in Hallettsville. Subsequently, Thumann moved to Long Mott, first living with her mother, then on her own. There was no evidence that her moves adversely affected her ability to care for O.G.

Thumann was employed at the time of trial and testified that she had been employed for a period of at least six months.[4] Thumann also testified that she had never placed the child outside of her home after the separation. It was reasonable for the trial court to find that Thumann's conduct since the entry of the temporary orders placed her closer to family and contributed to her maintaining steady employment, thus creating a more stable living situation for O.G.

Gaitan testified that he has lived in the same residence for several years and that he has the support of his family in caring for O.G. The trial court heard testimony that Gaitan has had a steady job for a significant period of time, has no other children that he owes a legal duty to support, and is involved in O.G.'s school. From this evidence, it seems that Gaitan is an active and concerned parent. Although there is evidence that Gaitan could provide a stable, loving environment for the child, there is also evidence that Thumann is prepared to do the same. The conflicts in the evidence here must be resolved by the trial court, who may choose to believe one witness and disbelieve others. *See Kuhlman*, 722 S.W.2d at 697.

---

[4] Thumann testified that she could not remember when she started her employment, but that she had been working there for "a good six to eight months."

### 5.   The acts or omissions of the parent and any excuse for the acts or omissions

Thumann testified Gaitan supplied the drugs and that they had both participated in the drug use. She also testified that the last time she used drugs was in 2010, a fact substantiated by her 2012 negative hair follicle drug test. Neither party testified they sought treatment or counseling. Based upon this evidence, the trial court could reasonably conclude that the issue of drug use involved both parents, but that Thumann was not currently using drugs and had not been for a significant period of time. We cannot substitute our judgment for that of the trial court simply because other evidence may support a different conclusion. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); see *Pena*, 8 S.W.3d 639 at 639; *see also Shoemake*, No. 13-05-00421-CV, 2007 WL 1288815, at *6.

### 6.   Summary

To the extent Gaitan argues the trial court improperly relied on factors outside of the best interest standard, we hold that a finding of best interest does not require a formulaic approach or a strict adherence to a lists of factors. *See Holley,* 544 S.W.2d at 372; TEX. FAM. CODE ANN. § 153.134(a)(7). Moreover, the challenged considerations are relevant within the framework of Section 153.134 and *Holley*. *See* TEX. FAM. CODE ANN. § 153.134; *Holley,* 544 S.W.2d at 372. Our review of the record shows that sufficient evidence exists to support the trial court's decision it was in O.G.'s best interest for Thumann to determine his primary residence. The trial court did not abuse its discretion in this regard. We overrule Gaitan's sole issue.

11

### III.     CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Delivered and filed the
4th day of September, 2014.