

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00069-CV

---

IN THE INTEREST OF B.R.H., A CHILD

---

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. FM20596

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Mother[1] appeals from a final order in a suit affecting the parent-child relationship, arguing that the trial court erred by (1) restricting Mother's possession of and access to supervised and therapeutic-only visitation with her minor child, B.R.H.; (2) awarding Father the exclusive right to make all educational decisions for B.R.H., including special-education and Individualized Educational Program (IEP) decisions; and (3) ordering Mother to pay guideline child support and provide health insurance for B.R.H. based on an implied higher earning capacity than her actual income. Finding the record supports the trial court's determinations, we affirm.

## I. Standard of Review

A trial court may modify the provisions of a divorce decree "that provide[] for the possession of or access to a child if modification would be in the best interest of the child" and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since" the decree's rendition. TEX. FAM. CODE ANN. § 156.101(a)(1)(A); *see In re A.G.*, 531 S.W.3d 329, 332 (Tex. App.—Houston [14th Dist.] 2017, no pet.). "We review a trial court's decision regarding custody, control, and possession matters involving [children] under an abuse of discretion standard." *In re B.F.*, No. 06-24-00100-CV, 2025 WL 2252577, at *5 (Tex. App.—Texarkana Aug. 7, 2025, no pet.) (mem. op.)

---

[1] To protect the identity of the child and persons through whom the child could be identified, we will refer to the appellant as "Mother," and the appellee as "Father," and to the child by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (Supp.); *see also* TEX. R. APP. P. 9.8. "In appeals involving the termination of parental rights, the Texas Rules of Appellate Procedure require the use of an alias to refer to a minor." *In re I.B.*, No. 13-17-00098-CV, 2017 WL 2806779, at *1 n.1 (Tex. App.—Corpus Christi–Edinburg June 29, 2017, no pet.) (mem. op.) (citing TEX. R. APP. P. 9.8). "We may also use an alias 'to [refer to] the minor's parent or other family member' to protect the minor's identity." *Id.* (alteration in original) (quoting TEX. R. APP. P. 9.8(b)(2)).

(alteration in original) (quoting *In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982))). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *Id.* (quoting *In re D.W.J.B.*, 362 S.W.3d at 780 (citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam))).

"Under the abuse-of-discretion standard, 'legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but are not independent grounds of error.'" *Id.* (quoting *In re M.O.*, No. 06-19-00004-CV, 2019 WL 2518470, at *5 (Tex. App.—Texarkana June 19, 2019, no pet.) (mem. op.)). "In our analysis, we determine 'whether the trial court had sufficient evidence on which to exercise its discretion, and, if so, whether it erred in the exercise of that discretion.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5). "Based on the evidence, we then determine whether the court's decision was arbitrary or unreasonable." *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5).

"In our analysis, we must 'recognize that "[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record."'" *Id.* (alteration in original) (quoting *In re M.O.*, 2019 WL 2518470, at *6 (quoting *In re Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.))). "We will not find that the trial court abused its discretion 'if there is some evidence of a probative and substantive character to support its decision.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *6).

3

## A. Supervised Possession and Access

In her first issue, Mother contends that the trial court erred in restricting her access to and possession of the child to supervised and therapeutic-only visitation. Mother argues that the record does not establish evidence that unsupervised visits would significantly impair B.R.H.'s physical health or mental development, nor does the evidence establish that lesser measures, other than supervised visitation, would not adequately protect B.R.H.

"There is a rebuttable presumption that a standard possession order is in the best interest of a child and provides reasonable minimum possession of a child for a parent named as a joint managing conservator." *In re P.A.C*, 498 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing TEX. FAM. CODE ANN. § 153.252). "However, a trial court is permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest . . . ." *Id.* (quoting *Hinojosa v. Hinojosa*, No. 14-11-00989-CV, 2013 WL 1437718, at *6 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, no pet.) (mem. op.) (citing TEX. FAM. CODE ANN. § 153.193 ("terms of an order restricting or limiting a parent's right to possession of or access to a child must not exceed those required to protect the best interest of the child"))). The trial court does not abuse its discretion "in fashioning restrictions on a parent's possession and access" if the record contains evidence to support a finding that such restrictions "are in the best interest of the child." *In re H.D.C.*, 474 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *In re S.A.H.*, 420 S.W.3d 911, 928 (Tex. App.—Houston [14th Dist.] 2014, no pet.)).

The trial court met with B.R.H. to discuss his feelings and desires in this case. The trial court found that B.R.H. was fearful of Mother and did not wish to be left alone with Mother. Evidence at trial established that on one occasion when B.R.H. was in Mother's possession, Mother had him admitted to a mental-health facility, without notice or conference with Father, and the trial court found that "such placement was unwarranted and harmful to the child." Testimony from B.R.H.'s licensed professional counselor, Lauren Tye Boatman, stated that such placement in a behavioral hospital should be a "last step" for children. Boatman explained that B.R.H. was "shock[ed]" to have been sent to such a facility and was exposed to inappropriate behavior in that setting. Boatman also testified that B.R.H. was doing well with his father and had a strong relationship with him. As to B.R.H.'s relationship with Mother, Boatman noted that B.R.H. loves his mother, but he did not want to stay with her, because he was scared that he would be placed in another facility. B.R.H. stated his desire to see Mother and communicate with her. Boatman recommended counseling sessions that included both Mother and B.R.H.

The trial court entered findings of fact and conclusions of law in this case detailing its decision to limit Mother's possession to supervised visitation. The trial court found that Mother "engaged in neglectful or harmful acts directed toward the child," "[t]he child also expressed fear of being left in the care of [Mother's] paramour or husband due to fear of corporal punishment," and Mother "made little effort to have contact with the child since a brief Christmas visit on December 24, 2024." Though Mother's argument frames B.R.H.'s stay in the mental-health facility quite differently, expressing that he had suicidal thoughts and preferred to be with Mother, "we are mindful that the [trial court], as fact finder, was the sole judge of the credibility

5

of the witnesses and the weight to be given their testimony." *In re P.A. C*, 498 S.W.3d at 214 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *In re T.T.*, 228 S.W.3d 312, 316 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)). "We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence." *Id.* (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *In re T.T.*, 228 S.W.3d at 316).

Because we conclude that the trial court's decision was premised upon B.R.H.'s best interests and was reasonable in light of the record, we will not overturn the trial court's decision regarding the possession order modification. Mother's first issue is overruled.

## B. Exclusive Decision Making as to Education

In her second issue, Mother argues that the trial court erred in granting Father sole discretion in decision making regarding B.R.H.'s education. Mother argues that the record shows that she was a strong advocate for B.R.H.'s educational needs, requesting testing and support for B.R.H.'s known educational impairments. However, the record is replete with examples of the inability of the parties to agree on B.R.H.'s educational needs, or to communicate with one another and reach decisions jointly with B.R.H.'s needs in mind. While Mother's argument on appeal is that she was the one focused primarily on B.R.H.'s needs and the trial court erred in determining that she could not be part of the decision making process, the trial court was within its discretion to determine whether, in the best interests of the child, a sole parent should be making those decisions.

"When the evidence shows that the parties are having trouble effectively co-parenting, communicating, or reaching shared decisions, a trial court generally is justified in selecting one parent as the exclusive decisionmaker to avoid conflict if doing so is in the child's best interest, which is a question we address below." *In re A.P.L.*, Nos. 01-23-00725-CV & 01-23-00843-CV, 2025 WL 2412903, at *12 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet.) (mem. op.) (citing *Coburn v. Moreland*, 433 S.W.3d 809, 828 (Tex. App.—Austin 2014, no pet.) ("where parties had ongoing conflicts about child's educational needs and activities, court did not abuse its discretion in selecting one parent as exclusive decisionmaker")). The trial court had the benefit of the testimony of Boatman, who agreed that B.R.H. was doing well in his homeschooling and was an average student, though she also noted that he had characteristics of dyslexia and possible ADHD. An IEP study was also done and made part of the record, in which it was noted that despite his learning difficulties, B.R.H. "has been successful with his homeschool instruction. He is making progress in the curriculum, reading fluently, along with his interest in reading expanding beyond what is in the curriculum." It was also noted in the IEP study that B.R.H.'s difficulties "are being addressed through accommodations to help [B.R.H.] be successful."

Accordingly, "[w]e do not find support for Mother's contention that the trial court had to try something less disruptive, . . . before giving Father the exclusive right to make . . . education decisions." *Id.* We overrule Mother's second issue.

## C.    Modification of Child Support and Health Insurance

In her third issue, Mother argues that the trial court erred when it increased her child support payments and required her to obtain health insurance for B.R.H. She argues that the trial court did not base its determination on any evidence in the record. Mother states, "The only reference to [her] income came from attorney Mark Breding, who simply told the court that [Mother] made $25 per hour, with no sworn testimony from [Mother] and no supporting documentation." We disagree with this assertion.

Mother's own testimony directly refutes these arguments. Mother testified that she worked full-time making $18.00 per hour. She also indicated that she would be providing health insurance to B.R.H. beginning "July 1st."

The Texas Family Code provides a statutory guideline to courts for setting the amount of child support due "BASED ON THE MONTHLY NET RESOURCES OF THE OBLIGOR" and the number of children to be supported. TEX. FAM. CODE ANN. § 154.125(b) (Supp.). The trial court ordered Mother to pay $468.44 monthly in child support and to obtain and maintain health insurance for B.R.H. The trial court, in its findings of fact and conclusions of law, indicated that it relied upon Mother's testimony that she was making $18.00 per hour full-time and had one other minor child to provide for to calculate her monthly child support obligations. Further, by her own testimony, Mother asserted that she would be providing health insurance for B.R.H. beginning in July. As such, we find the record supports the trial court's determinations regarding child support and health insurance, and we will not overturn the trial court's decision in that regard. Mother's third issue is overruled.

8

## II.      Conclusion

We affirm the order of the trial court.


                                        Scott E. Stevens
                                        Chief Justice

Date Submitted:      January 21, 2026
Date Decided:        February 11, 2026