

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00073-CV

IN THE INTEREST OF K.D.C., A CHILD

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 85701

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

In this suit modifying the parent-child relationship, the trial court appointed Father and paternal grandmother, Peggy, as joint-managing conservators of K.D.C., named Mother as a possessory conservator, and specified that maternal grandmother, Maggy, would have no conservatorship rights to K.D.C.[1]  Maggy appeals, arguing that (1) the trial court was without jurisdiction because Peggy lacked standing to intervene in the suit, (2) the trial court denied her due process by proceeding to trial in her absence, and (3) the trial court abused its discretion by modifying the parent-child relationship in a manner that excluded her.  Maggy's pro se brief also complains of the trial court's temporary orders and contends that the court failed "to perform mandatory ministerial duties, including ruling on objections and motions, making statutorily required findings, and ensuring an adequate record for appellate review."

We find that the Texas Family Code gave Peggy standing to intervene in the suit, Maggy was not denied due process since she had ample notice of the trial setting but failed to appear, and the trial court did not abuse its discretion when modifying the parent-child relationship.  We further find that Maggy's complaints regarding temporary orders are moot and that her other complaints either lack merit or are inadequately briefed.  As a result, we affirm the trial court's judgment.

I.      **Factual and Procedural Background**

In 2018, the trial court established Father's paternity, named Mother and Father joint-managing conservators of K.D.C., gave Mother the exclusive right to determine the child's

---

[1]To protect the child's identity, we use initials for the child and pseudonyms for his family members.  *See* TEX. R. APP. P. 9.8.

residence, and established Father's child support obligations. As a result, the trial court became the court of "continuing, exclusive jurisdiction." TEX. FAM. CODE ANN. § 155.001(a) (Supp.).

In November 2022, Mother moved for a temporary restraining order against Father on the grounds that exchanges of the child were not going well. The following month, the trial court entered temporary orders (1) restricting Mother and Father's communication to those related to the welfare of K.D.C., (2) requiring all further exchanges of the child to be conducted through Maggy and Peggy, and (3) prohibiting Mother's and Father's presence during those exchanges. In April 2023, Mother nonsuited her case against Father.

Yet, in May 2023, Maggy filed a petition for modification of conservatorship, possession, and access to K.D.C. and moved for a temporary restraining order against both Mother and Father. In support of her petition, Maggy filed an affidavit alleging that the child had been living with her until March 23, when Father picked the child up and refused to allow Maggy to see him. Maggy stated in her affidavit that, despite Father's history of mental and physical abuse against Mother, Mother and Father were again in a relationship and were living together with K.D.C. According to Maggy, Mother and Father were consuming drugs, including methamphetamine, in the home with the child, and had recently been involved in an incident of domestic violence requiring police intervention.

In her petition, Maggy alleged that K.D.C.'s then "present circumstances w[ould] significantly impair . . . the child[]'s physical health or emotional development." She also stated that Mother had voluntarily relinquished primary care and possession of K.D.C. for at least six months. As a result, Maggy sought appointment as the child's sole managing conservator and

3

moved for temporary orders, which the trial court granted on July 31. As a result of those temporary orders, the trial court ordered Mother and Father to surrender K.D.C. to Maggy and limited their contact with him.

On August 2, 2023, Maggy petitioned the trial court for further orders on the grounds that Mother and Father had failed to comply with the temporary orders and instead moved the child to Oklahoma. As a result, the trial court issued a writ of attachment "commanding any Sherrif or Constable in the State of Oklahoma" to take possession of K.D.C. and deliver him to Maggy. Two days later, an Oklahoma court appointed Peggy "Special Guardian" of K.D.C.

In September 2023, Peggy filed a petition in intervention. She alleged that "[t]he appointment of the parents of the child as managing conservators would not be in the best interest[s] of [K.D.C.] because the parents' [then] present circumstances would significantly impair the child's physical health or emotional development." Accordingly, Peggy moved to be appointed as K.D.C.'s sole managing conservator and sought temporary orders placing the child with her.

The trial court appointed Lara Bracamonte Davila as the attorney ad litem for K.D.C. On July 29, 2024, after observing all parties, Davila moved for temporary orders because Maggy and Peggy were unable to agree on temporary provisions for K.D.C. while the case was pending. Davila was concerned about the emotional well-being of K.D.C. while in Maggy's care. She recommended that K.D.C. remain with Peggy. Davila also moved for ex parte temporary restraining orders preventing Maggy's possession of K.D.C. while the case was pending. Davila's affidavit in support informed the trial court of the following:

4

[K.D.C.] has expressed fear and concern about returning to [Maggy]'s home on August 4, 2024. [K.D.C.] has expressed a desire to stay permanently with Intervenor, [Peggy]. [K.D.C.] has discussed with me the manner in which [Maggy] speaks about Intervenor and Intervenor's extended family, as well how she instructs [K.D.C.] to lie to others, includ[ing] the judge and me. [Maggy] has also used racial slurs describing the Intervenors. I have watched [K.D.C.] shut down and nearly cry when he was asked to talk to [Maggy].

. . . .

. . . With no order in place, I am very concerned that [Maggy] will hide and secrete [K.D.C.] to prevent future visitation with Intervenor. In March 2024, [Maggy] refused to surrender [K.D.C.] to Intervenor and repeatedly lied about her location so as to prevent the pickup of [K.D.C.], and refused to communicate with me. It was not until I sought court-intervention by filing a *Motion for Issuance of Writ of Attachment* that [Maggy] surrendered [K.D.C.]. [Maggy] has proven she is unable to comply with my recommendations or agreements between the parties.

On August 2, 2024, the trial court entered ex parte temporary orders and set a hearing for August 9. After the hearing, the trial court ordered the child to remain with Peggy and restricted Maggy's possession of and access to K.D.C.

At a March 31, 2025, status hearing, in which Maggy's counsel appeared, the trial court set the case for a final hearing on July 25, 2025, at 11:00 a.m. However, Maggy's counsel withdrew in June. The trial court's order granting the motion to withdraw notified Maggy again of the "final hearing on Friday, July 25, 2025, at 11:00 a.m." Maggy moved for a continuance of the "hearing . . . set for July 25, 2025," and requested that notices be sent to her email address.

The trial court sent notice of the hearing on Maggy's motion for continuance for July 21, 2025. Maggy appeared in person at that hearing and asked the trial court "to reset the final hearing from July 25th." Citing to its busy docket and the fact that the suit for modification had

been on file for two years, the trial court denied the motion for continuance and informed Maggy that it would see her on the 25th for trial. Even so, Maggy failed to appear for trial.

By the time of trial, K.D.C. had been living with Peggy for approximately one year. Peggy said that K.D.C. had good grades, received an academic award at his school, and won the most improved player award in basketball. Peggy informed the trial court that K.D.C.'s maternal grandfather and other members of Mother's family lived close to them. According to Peggy, Maggy had not seen K.D.C. since August 2024, even though the trial court had allowed her to visit him.

Since Mother, Father, and Peggy lived in Oklahoma, Maggy was the only party that lived in Texas. According to Peggy, Maggy told K.D.C. while he was in her care that Peggy would take him to Oklahoma and would not return him, placing him in fear of visiting Peggy. Peggy said that K.D.C. was "terrified" of Maggy and wanted "nothing to do with her." Peggy testified that Davila requested all interested parties to complete drug testing but that Maggy did not comply.

Mother also testified that she did not want K.D.C. to have access to Maggy. Mother informed the trial court that she tried to stay away from Maggy, whom she described as "detrimental." The trial court noted on the record, and Mother agreed, that Maggy filed documents making false claims against Mother. Mother said that Maggy filed restraining orders and protective orders "[a]ll the time" when she did not get her way.

6

In support of Peggy, Mother testified that visits with K.D.C. facilitated by Peggy were going smoothly. Mother testified that leaving K.D.C. with Peggy while allowing her possessory access to him was in the child's best interests.

Davila testified that she spoke with K.D.C., who had "bloomed" since living with Peggy, who provided Mother and Father with visitation. Davila said that K.D.C. "talked about things that ha[d] happened when he was down here with [Maggy]" and testified that K.D.C. needed to remain with Peggy.

Before making its determination, the trial court noted that Maggy was aware of the trial date and added, "[s]he is the reason that we're here, back before the [c]ourt, and has failed to show for the final hearing. And also, the reason why we had multiple continuances to get us to this date, almost two years after the filing of the initial case."

At the conclusion of the trial, the trial court determined that there had been a material and substantial change in the parties' circumstances since the 2018 order, appointed Father and Peggy joint-managing conservators of K.D.C., and named Mother as a possessory conservator.

## II. Grandparent Standing to Intervene Was Established

In her first point of error, Maggy argues that the trial court lacked jurisdiction because Peggy did not have general standing under Section 102.003 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 102.003 (Supp.). However, "[i]n addition to the general standing to file suit provided by Section 102.003," the Texas Family Code establishes circumstances giving grandparents standing under Section 102.004. TEX. FAM. CODE ANN. § 102.004(a) (Supp.).

7

We apply the de novo standard of review as used in *In re H.S.*, 550 S.W.3d 151, 154–55 (Tex. 2018) ("The only issue presented is whether Grandparents had standing under the Family Code to file a [suit affecting the parent-child relationship] seeking conservatorship of [the child]. . . . Standing, like other issues implicating a court's subject matter jurisdiction, is a question of law that we review de novo." (citations omitted)).

Here, Maggy had filed a petition seeking modification of the parent-child relationship under Section 102.004 and alleged that K.D.C.'s "circumstances w[ould] significantly impair . . . the child[]'s physical health or emotional development." Peggy intervened in Maggy's suit.

Section 102.004(b-1) states,

> A grandparent . . . may intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

TEX. FAM. CODE ANN. § 102.004(b-1) (Supp.). Peggy's pleading mirrored Maggy's, alleging that "[t]he appointment of the parents of the child as managing conservators would not be in the best interest[s] of the child because the parents' present circumstances would significantly impair the child's physical health or emotional development." Both Maggy and Peggy provided affidavits explaining why. Moreover, Mother had voluntarily relinquished primary care of the child in September 2023. Among other things, Peggy's affidavit alleged that Mother's and Peggy's whereabouts were unknown, that they were not caring for the child, and that keeping Mother and Maggy as joint-managing conservators with the primary right to designate K.D.C.'s residence created a grave danger to him. Peggy also suggested in her affidavit that Mother and

8

Maggy were secreting K.D.C. from Father's family and were failing to comply with court orders. Peggy's petition was sufficient to show that she had standing.

We conclude that Peggy had grandparent-intervenor standing under Section 102.004(b-1). As a result, we overrule all of Maggy's points of error related to the trial court's jurisdiction.

## III. There Was No Denial of Due Process

In her second point of error, Maggy complains that the trial court denied her due process "by excluding [her] from proceedings, denying a meaningful opportunity to be heard, relying on off-record communications, and enforcing a coerced 'agreement.'"[2] We find these complaints meritless.

Nothing shows that the trial court excluded Maggy from trial or denied her a meaningful opportunity to be heard. Instead, the record shows that the trial court provided ample notice of the trial setting and that Maggy had actual knowledge of the trial setting but failed to appear.

Maggy also argues that the trial court held "off-record communications" about the merits that resulted in some agreement, but the appellate record shows no such occurrence at trial related to this point. Moreover, Maggy failed to include any citations to the record supporting her claim, even though a "brief must contain a clear and concise argument for the contentions made, with appropriate citations to . . . the record." TEX. R. APP. P. 38.1(i).

Simply put, nothing in the record before us shows that Maggy's due process complaints have merit, and we overrule her second point of error.

---

[2]Maggy does not argue that the trial court abused its discretion by denying her motion to continue the case.

## IV. The Modification Order Was Not an Abuse of Discretion

The trial court expressly found that the allegations in Peggy's petition in intervention were meritorious and that the modifications to the 2018 order requested by Peggy were in K.D.C.'s best interests. In her third point of error, Maggy complains that the trial court modified the 2018 order without legally sufficient evidence.

"We review a trial court's decision regarding custody, control, and possession matters involving [children] under an abuse of discretion standard." *In re B.F.*, No. 06-24-00100-CV, 2025 WL 2252577, at *5 (Tex. App.—Texarkana Aug. 7, 2025, no pet.) (mem. op.) (alteration in original) (quoting *In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982))). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *Id.* (quoting *In re D.W.J.B.*, 362 S.W.3d at 780 (citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam))).

"Under the abuse-of-discretion standard, 'legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but are not independent grounds of error.'" *Id.* (quoting *In re M.O.*, No. 06-19-00004-CV, 2019 WL 2518470, at *5 (Tex. App.—Texarkana June 19, 2019, no pet.) (mem. op.)). "In our analysis, we determine 'whether the trial court had sufficient evidence on which to exercise its discretion, and, if so, whether it erred in the exercise of that discretion.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5). "Based on the evidence, we then determine whether the court's decision was arbitrary or unreasonable." *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5).

During "our analysis, we must 'recognize that "[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record.""" *Id.* (alternation in original) (quoting *In re M.O.*, 2019 WL 2518470, at *6 (quoting *In re Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.))). "We will not find that the trial court abused its discretion 'if there is some evidence of a probative and substantive character to support its decision.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *6).

A trial court may modify the provisions of a prior order "that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child" and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order." TEX. FAM. CODE ANN. § 156.101(a)(1)(A).

Here, the trial court found that the circumstances of the parties had materially and substantially changed. This finding was supported by the record, which showed that Mother, who was the joint-managing conservator of the child with the right to designate his primary residence under the 2018 order, had voluntarily relinquished the child's primary care to another for at least six months. *See* TEX. FAM. CODE ANN. § 156.101(a)(3) (allowing modification if the alteration is in the best interests of the child and "the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months"). The finding of material and substantial change was also shown by the allegations in Maggy's own petition, sworn statements

that exchanges of K.D.C. were not going well, and the fact that, since the 2018 order, Mother and Father had moved to Oklahoma, where they had lived for the past "several years." The record facts recited above also supported the trial court's best-interests finding. Mother and Davila both testified that leaving the child with Peggy while allowing Mother possessory access to the child was in the child's best interests and explained why allowing K.D.C. to stay with Maggy was not in his best interests.

Because we find that the trial court's decision to modify the 2018 judgment was supported by the evidence, we conclude it was not an abuse of discretion for the trial court to do so. As a result, we overrule Maggy's third point of error.

## V. We Overrule All Remaining Complaints

Next, Maggy raises several complaints related to the trial court's temporary orders. "We have previously explained that '"complaints about temporary order[s] become moot" on the entry of a final order.'" *In re B.F.*, 2025 WL 2252577, at *4 (alteration in original) (quoting *In re N.V.R.*, No. 06-17-00023-CV, 2017 WL 3751525, at *5 (Tex. App.—Texarkana Aug. 31, 2017, no pet.) (mem. op.) (quoting *In re E.R.C.*, 496 S.W.3d 270, 278–79 (Tex. App.—Texarkana 2016, pet. denied)) (citing *In re Marriage of Teague*, No. 06-21-00021-CV, 2021 WL 5498121, at *3 (Tex. App.—Texarkana Nov. 24, 2021, no pet.) (mem. op.); *In re D.R.*, 631 S.W.3d 826, 836 (Tex. App.—Texarkana 2021, no pet.))). Because the trial court entered a final judgment in this suit affecting the parent-child relationship, we overrule Maggy's complaints relating to the temporary orders as moot.

Maggy also argues that the trial court failed to perform ministerial duties such as ruling on her post-trial motions for new trial and failing to make findings of fact and conclusions of law. However, Maggy's motions for new trial were overruled by operation of law, and she failed to request any findings of fact or conclusions of law. *See* TEX. R. CIV. P. 296, 329b(c). We also overrule her conclusory complaint that the record is inadequate for appellate review.[3]

## VI.  Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:      February 11, 2026
Date Decided:       March 5, 2026

---

[3]Further, to the extent that Maggy's pro se brief can be read to raise additional issues, we find them inadequately briefed. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Finally, "[a]n appellant is not permitted to raise an issue in a reply brief that was not included in the original brief." *Curtis v. Urbina*, No. 06-19-00028-CV, 2019 WL 4124632, at *4 (Tex. App. Aug. 30, 2019, pet. denied) (mem. op.) (alteration in original) (quoting *In re Marriage of Bills*, No. 06-14-00056-CV, 2014 WL 5585778, at *3 n.5 (Tex. App.—Texarkana Nov. 4, 2014, no pet.) (mem. op.)). To the extent that Maggy's reply brief intends to raise issues not brought by her opening brief, we overrule those issues as well. *See id.*